## VALIDITY OF ARREST BY OHIO NATIONAL GUARD.

Common Pleas Court of Cuyahoga County.

IN RE APPLICATION OF EDWARD S. SMITH FOR A WRIT OF HABEAS CORPUS.

Decided, June 7, 1913.

*Militia—Authority of, to Make Regulations for Protection of Life and Property—Validity of Arrests Made by—How Accused Persons May Be Tried—Resisting a Person to Assist an Officer Can Not be Made an Offense by Ordinance.*

1. The commanding officer of troops of the Ohio National Guard, when such troops are ordered into active service by the Governor, in cases of riot, disorder, invasion, or overwhelming disaster, may make reasonable regulations for the protection of life and property, whether martial law has been proclaimed or not.

2. Where a portion of a city has been visited by a disastrous flood, and much property has been temporarily abandoned by reason thereof, an order by the commander of troops excluding all persons from such flooded district without a pass was a reasonable and proper regulation.

3. Troops so on duty under such circumstances might properly arrest a person who sought to force his way across their line, whether martial law had been declared, or whether the troops were called in aid of the civil authorities only; or they might forcibly eject him, using no greater force than necessary.

4. After such arrest, the offender might be brought to trial before a military commission if martial law were declared, but if not, he should be turned over to the civil authorities.

5. Upon such a prisoner being turned over to the civil authorities, the jurisdiction of the military commander ceases; and the validity of an ordinance under which he is subsequently arraigned and tried by the civil authorities may be tested by habeas corpus.

6. An ordinance of the city of Warren making it an offense "to resist a person called to assist an officer" is void; first, for the omission of the words "in making an arrest" and, second, by reason of the fact that the Legislature has made the same act an offense under the state law, and the city council was without authority to enact the ordinance..

7. Even under laws making it an offense to resist a person called to assist an officer in making an arrest, citizen assistants are con-

templated; and troops acting under the authority of the Governor would not be properly so designated. They are more in the class of officers themselves, as they act under the direction of their military superiors, and not by direction of the arresting officer.

8. Where an officer has lawfully assumed control over or protection of property, and in an emergency justifying it has segregated it for its more complete protection, as by fire lines or guards, a person knowingly forcing his way through such lines or guards might properly be charged, under Section 12858, General Code, with resisting an officer, even though no force be directed against his person.

*F. F. Truhlar,* for relator.

*Wing, Myler & Turney, E. K. Wilcox* and *J. P. Mooney,* contra.

FORAN, J.

In the case of the application of Edward S. Smith for a writ of habeas corpus, if counsel for the relator desires to amend his petition by stating that the ordinance under which this man was arrested, convicted and imprisoned is invalid and its enactment beyond the powers of the city counsel of Warren, he may do so.

In this case the relator says that he is unlawfully imprisoned by W. H. Cowley, superintendent of the Cleveland Correction Farm, Cuyahoga County, Ohio; that he was imprisoned on a charge contained in an affidavit of one F. H. Flowers, for unlawfully and willfully resisting an officer, or a person called to assist a police officer of the city of Warren, Ohio. He says that he was brought before Z. F. Craver, mayor of the city of Warren, for trial; that the affidavit was read to him; that he pleaded not guilty and demanded a jury trial, and that the mayor refused to impanel a jury to try him; that said mayor thereupon, without impaneling a jury, proceeded with the trial, and, upon the testimony of two members of the Ohio National Guard, found him guilty and sentenced him to pay a fine of $25 and costs, and stand committed until the fine and costs were paid.

The record does not disclose the proceedings had upon this charge before the mayor. It was admitted by counsel for com-

plainant, however, that he was arrested under an ordinance which only imposed a fine as a penalty; that imprisonment is no part of the penalty, except as a means of collecting the fine; therefore he was not entitled to a trial by jury, and if he did demand a jury trial, it was properly refused.

From further admissions by Colonel Turney, of counsel for respondent, it seems that about the 28th of March of this year unprecedented storms and floods prevailed throughout Ohio, and that the city of Warren, Trumbull county, was so visited. In the city of Dayton, and perhaps other cities, martial law was declared. In the city of Warren martial law was not declared. Conditions were so serious, however, that the militia were called out by the Governor, and one company of the Ohio National Guard under orders to proceed to Dayton, Ohio, was held at Warren, for the purpose of aiding the civil authorities of that city in protecting property and preserving order; and it is said that this company of the Ohio National Guard, acting in concert with the civil authorities, established a picket line or a line of pickets surrounding a portion of the flooded district. which had been abandoned by many citizens seeking safety on the higher ground, and leaving much unprotected property for the purpose of protecting such property and preventing people, citizens or other persons, from going into that district. The relator in this case, notwithstanding the civil authorities had requested the militia to establish this picket line around this district, or perhaps, rather, to protect persons and property in this district, passed through the picket lines or the guard, against their protest. He did this upon the pretense that he desired to take some pictures of the flooded district, but it is claimed by the respondant, and perhaps with some considerable truth, that his real purpose was to show his defiance and contempt of authority, and especially the authority of the citizen soldiery thus on duty. Be that as it may, it is quite clear that the conduct of the relator was extremely reprehensible. When these guards were placed around that district, all citizens and all persons were under moral, if not legal, obligation to obey the order; and when this man undertook to dispute the order, he placed himself upon a

level with common violaters of law.  He did an act that reflects discredit upon himself, and placed himself in the position of a common disturber of the peace.  Any man who had any conception of the duties he owed to the community and the duties he owned to himself would have obeyed the order and kept away from that district; but for some reason or another this man saw fit to disregard the order, and, in open defiance thereof, he passed through the line of the National Guard.  For this act he was arrested by the guard, turned over to the civil authorities, taken before the mayor, tried, convicted and sentenced, as above set forth.  If these members of the National Guard had forcibly ejected him from the line they were guarding, even at the point of the bayonet, but using no more force than necssary to accomplish such ejectment, they would have been within the law, and he could not complain, even though martial law had not been declared in that portion of the state.

Section 5275 of the General Code provides that, when a portion of the National Guard is ordered into active service, the rules and articles of war and general regulations for the government of the army of the United States shall be in force, and regarded as part of the title of the statutes of this state relating to the militia.

It is claimed by the respondent, and properly so claimed, that under this section of the General Code the militia, while in active service, may forcibly eject a person who is disobeying any lawful order made by the militia, or its commander, from their camp or lines; second, they may arrest and try such person by a military commission; third, they may arrest and turn such person over to the civil authorities.  In the present instance the commander in chief of the National Guard, by order, reversed this order of procedure; that is to say, directed the troops to adopt the third course if practicable, the second if the civil courts were not able to take the case, and the first in cases of necessity only; and therefore the relator was arrested and turned over to the civil authorities.  These regulations, and other reasonable regulations, necessary under the circumstances for the protection of life and property, the commanding officer

of the Ohio National Guard had a right, under this section of
the statutes, to make and enforce.    The order of the commander
of the troops establishing this line and forbidding persons to
pass through it, had the same force and effect as if made by
the mayor, or chief of police, and was being enforced by patrol-
men under him, even though the means and methods of enforc-
ing the order were different.

I can not find language strong enough to characterize the con-
duct of the relator under all the circumstances.    The members
of the National Guard who were on duty at the time left com-
fortable homes and were doing duty at Warren to aid in pro-
tecting life and property and to preserve order during the
emergency then existing.    Weather conditions were extremely
severe, and these men subjected themselves to all the extreme
hardships of military life.    They were doing this for the preser-
vation of order and the protection of life and property; and any
man that interfered with them can not be regarded as a good
citizen, and must be characterized as an unspeakable ass.    The
National Guard of Ohio, so far as I am aware, is composed of
some of the best men in our state.    They are deserving of credit
for belonging to the guard, and must be regarded as citizen
soldiery of the first class; and when they are called out to pre-
serve life and property, any man that interferes with in the
discharge of their duties in this respect shows he has no proper
conception of the duties of citizenship, and is in fact, unfit to be
a citizen.    But this is beside the question.

The relator was arrested by two members of the National
Guard, and the question arises, did they have authority to make
this arrest?    And more particularly the question arises, was
the trial and conviction of the relator by the mayor of the city
of Warren, under the section of the ordinances of that city
under which he was tried, valid?

In answer to the first query:    To say that they were not
authorized in law to make the arrest would lead to the absurd
conclusion that, although the Legislature had enacted definite
provision for the calling out of the troops in like emergencies,
yet when so called they might do nothing toward accomplishing

the purposes for which they were so called, or discharging one of the highly important duties for which they were organized. We therefore hold that authority for making the arrest was clear. A consideration of the second proposition, however, presents another important consideration. It will be conceded that when the relator was turned over to civil authorities, the militia had no further power or authority over him. The commitment is as follows:

"Whereas Edward S. Smith, late of said county, city of Warren, has been arrested upon the oath of F. H. Flower, in that on the 29th day of March, A. D. 1913, in the city of Warren, county of Trumbull, the said Edward S. Smith unlawfully and willfully did oppose and resist an officer or a person called to assist a police officer in the city of Warren."

The resisting of an officer in this instance seemingly consisted in violating the order of the National Guard, an order that the commander of the guard had a right, under the circumstances, to make and enforce. This is very evident from the reading of the context of this affidavit, and from the facts and admissions before the court. It is not claimed that there was any physical resistance, nor was that necessary, for, to constitute the offense of resisting an officer, it is not necessary that the officer should be assaulted, beaten or bruised (*Woodworth* v. *State*, 26 O. S., 196.) It would be sufficient to constitute the offense of resisting an officer if the relator knowingly and willfully, in the presence of the officer, obstructed or interfered with the officer in the discharge of his duty; that is, if a member of the National Guard can be said to be an officer or a person called to assist an officer within the meaning of the law.

Under Section 5275 of the General Code, above cited, it may be claimed that when members of the National Guard are on active duty in aiding and assisting the civil authorities to preserve life and property, they are officers within the meaning of the law; but, without passing upon that very doubtful question, it may be sufficient to say that if the civil authorities ordered this line of pickets around this flooded district, the civil authorities and its officers were at least constructively present, and the

relator might have been arrested, tried and convicted under the state law for resisting an officer if he knew the civil authorities had established this line or had ordered it to be established. It is not essential to the conviction of the relator for the offense committed by him, if any, to hold that members of the National Guard are civil officers. He certainly could have been arrested and tried, under the ordinance of the city of Warren, for disorderly conduct, and punished as this ordinance prescribes, for no one will deny that his conduct was contumaciously disorderly. It is contended, however, by the respondent that this is an application to review a proceeding, and therefore should be denied; that is, to review a criminal proceeding.

Now, while it is undoubtedly true, as a fundamental, elementary proposition, that a writ of habeas corpus can not be used to perform the functions of a writ of error, it is equally true that a person can not be lawfully arrested and imprisoned for violation of an ordinance, the enactment of which is beyond the power of the council passing the same, or otherwise invalid, or a statute or a law that is unconstitutional or invalid; and when so arrested and imprisoned, and he seeks relief on habeas corpus, the question as to constitutionality or invalidity is a jurisdictional one. If the party is tried and convicted by a court of limited jurisdiction, such as a mayor's court (and that is the case here), a court authorized to issue the writ (and this court is authorized to issue the writ) will examine into the constitutionality or validity of the statute or ordinance, and remand the prisoner if the statute is found constitutional and valid, or discharge him if the ordinance is found invalid for any reason.

To obtain relief on habeas corpus from a judgment void because the ordinance under which the prisoner was convicted and imprisoned is invalid or unconstitutional, that fact must be asserted, as it is a jurisdictional fact and is the only question involved. That is the reason I have permitted an amendment to the petition. I want to give the defendant, notwithstanding I believe his conduct is reprehensible in the extreme, the benefit of every legal safeguard the law provides. If the judgment is good in part and bad as to the remainder, and the

good is complete in itself and can be separated from the invalid part or the unconstitutional part, the unauthorized part may be disregarded. We do not think this can be done in this instance. How can the valid part of this ordinance, if it be valid, be separated from the invalid part thereof? The ordinance presented to the court is as follows:

"Sec. 133. [*Abusing an Officer.*] It shall be unlawful for any person to abuse any officer of the city of Warren, Ohio, or willfully oppose, resist, obstruct or interfere with any police officer of the city, or person called to assist either of said officers in the discharge of his official duty."

Reference is here made, of course, to civil officers.

If it be conceded that the city of Warren had authority, under and by virtue of the statutes of the state, to pass the first portion of this ordinance, it certainly had no authority to pass the latter paragraph of the ordinance, that is, to arrest, convict and imprison a man for interfering with a person called to assist an officer in the discharge of his official duty. Surely, if an officer should call upon a citizen to help him serve writs of subpoena, or to assist him in patrolling his beat, it would not be a misdemeanor to resist the person so called upon while he was aiding the officer in this respect. A citizen would have no means of knowing whether such a person was an officer, and as a matter of fact he would not be an officer; and if such a man undertook to arrest a citizen, it would not be an offense to resist such arrest. This could not be done even under the state law. Section 12857 of the General Code provides, that if a person called upon by an officer to assist the officer in apprehending a person charged with or convicted of a criminal offense, or in securing such a person when so apprehended, or in conveying him to prison, and the person so called upon to assist the officer neglects or refuses to do so, he shall be fined not more than fifty dollars. Here we find that it is not an offense against the laws of this state to refuse or neglect to assist an officer in apprehending a person, or in securing such person when apprehended, *unless* the person has been charged with or is convicted of a criminal offense. So that, even under the state law, an information or indictment

simply charging a person with refusing to assist an officer in the discharge of his duty, without the further statement that he was called upon to assist the officer in apprehending a person charged with a crime or convicted of a crime, would not be sufficient; and no conviction could be based upon such information or indictment.

By virtue of Section 13492, under the facts in this case, the relator might have been held for a violation of an ordinance preventing disorderly conduct and providing for its punishment, until a warrant could be obtained; but, as has been said, the difficulty in the case before the court, even if it be admitted that the ordinance is valid in part and invalid in part, is to determine under which portion of the ordinance the relator was convicted.

A city or municipality has no inherent power to pass ordinances or enact laws. It has no powers in this respect except such as are expressly and clearly conferred upon it or granted to it by the Legislature, or which must necessarily be implied by clear intendment in order to carry into effect the powers expressly granted. In this respect, the distinction between the constitutional and statutory provision obtains. The Constitution is the basic, fundamental or organic law of the state, in which rests the supreme power so far as delegated by the people in their sovereign capacity. A statute is the written will of the governing body, or the Legislature, created by the Constitution. This governing body can not exceed the powers granted to it by the Constitution. Any power not expressly granted or fairly and necessarily implied to carry into effect the powers expressly granted, is retained. Municipal corporations are agencies or instrumentalities to which the Legislature delegates a portion of the governmental power vested in it, in order to meet local conditions and wants pertaining to populous communities, for which the Legislature makes only general provisions; and any power not so expressly delegated, or which may be necessarily implied, to carry into effect the power so expressly granted, is retained by the state. Where the Legislature has enacted laws for the punishment of offenses, and thus exercised its jurisdiction in

that regard, a presumption arises that the Legislature intended to make its jurisdiction over such matters exclusive.; and if a municipality undertakes to exercise jurisdiction over offenses of which the Legislature has taken exclusive jurisdiction, and the grant of legislative power is uncertain or doubtful, the power of the municipality in that regard must be denied.

By Section 12858 of the General Code, the Legislature provides that it shall be a misdemeanor to resist, abuse or obstruct an officer, and provides severe punishment or penalties for such offenses. The claim by the city of Warren of the power also to provide by ordinance for the punishment of the same offense is surely wholly unnecessary and superfluous, and its power to do so should be supported by legaslative grant so clear and explicit as to leave no room for doubt.

It is claimed that the contention, if given full scope and carried to its legitimate conclusion, would enable municipal corporations to pass and embody into ordinances the whole body of state laws providing for the punishment of misdemeanors of every nature and description. Such a contention can not for a moment be entertained. The fact that the state has provided for a punishment for resisting an officer precludes the city of Warren from exercising the power to pass the ordinance in question. The only legislative grant of power to municipalities with respect to the enactment of ordinances for the punishment of offenses is Section 1692 of the Revised Statutes, which was in force at the time the ordinance in question was passed or enacted. This section, however, is limited in its scope by Section 2108 of the Revised Statutes, which was also in force at the time this ordinance was passed.

By Section 1692 of the Revised Statutes, it is provided that municipalities, in addition to the power specifically granted in the title of which that section is a part, and subject to exceptions and limitations in other parts of it, shall have general powers to provide by ordinance for the prevention of riots, gambling, noise and disturbance, indecent and disorderly conduct, and to preserve the peace and good order and protect the property of the respective municipalities and its inhabitants.

This power, as has been said, is limited by Section 2108, which gives the council of a municipality the power to provide for the punishment of persons disturbing the good order and quiet of the corporation by clamor and noise in the night season, by intoxication, drunkenness, fighting, using obscene or profane language in the streets or other public places, to the annoyance of the citizens, or otherwise violating the public peace by indecent and disorderly conduct, or by lewd and lascivious behavior.

It is true that the power granted by the Legislature, and intended by it, under Section 1692 of the Revised Statutes, is the power to suppress and punish minor acts of misconduct that are generally known as public disorders and annoyances; and in so doing it is undoubtedly true that a municipality may duplicate, in these minor acts of misconduct, offenses punished by the state.

As was said in *City of Wellsville* v. *O'Connor and Kirkbride*, 1 C.C.(N.S.), 253, by Burrows, J.:

"It is evident that the Legislature intended to cover the whole field of public peace regulation in the latter section (2108), not some small portions of it; and if that has been done, the attempt to extract from Section 1692 the authority contended for must fall, technically as well as actually. If we are right in our position that the claimed authority must be found, if at all, in Section 2108, the controversy comes to an end; and while this section can not, by any sort of microscopical analysis, be made to furnish authority to the council to make the crime of assault and battery a municipal offense, it is a piece of legislation that carries the ear-marks of careful consideration. Its domain is outside of the criminal laws of the state, and is a complete statement of them. It embraces only such local and comparatively trivial misconduct as may cause disturbance and annoyance to citizens upon streets or other public places, and allows the corporation to punish such misconduct, although it may be incidental to the commission of a greater offense made punishable by the statute."

And indeed it may be said that the prosecution under an ordinance for the punishment of these local offenses will not be a bar to a prosecution by the state for the same offense where the state provides a penalty therefor. Indeed we may go far-

ther, and say that the relator in this case may still be prosecuted for any offense that he really committed, either by the state or the city of Warren under any valid ordinance, such as an ordinance for preventing disorderly conduct.

The case just cited, *City of Wellsville* v. *O'Connor and Kirkbride,* is a well-considered case, and is cited here in support of the propositions laid down. The Circuit Court of Columbiana County, in that case, held that the city of Wellsville had no authority to pass an ordinance providing for the punishment of assault and battery.

Resisting an officer may be punished, under Section 12858 of the General Code, by a fine of $500 and imprisonment not more than thirty days, or both. The penalty in this case is practically as severe as that for assault and battery. The offense is a serious one, as it strikes at the very foundations of social order. And if the city of Warren could not pass an ordinance, under the general delegation of power granted it by the state, to punish a person for assault and battery, neither has it authority or power to pass an ordinance to punish a person for resisting an officer. The state has taken exclusive jurisdiction of this offense, and the city of Warren has no authority to exercise jurisdiction in respect thereto. The regularity of these proceedings can not be assailed by the writ of habeas corpus, for the writ deals with defects which go to the jurisdiction of the court, and which render the proceedings or the judgment void. If that part of this ordinance, or the whole of it, under which this relator was arrested and convicted was unauthorized and void, the court had no jurisdiction, and the judgment rendered by the mayor of Warren was utterly void, and relator ought to be discharged.

There are same recent cases that bear upon this question. In a case decided in Hamilton County Common Pleas Court in May of this year, found in 14 N.P.(N.S.), p. —, it is said in the syllabus:

"Intoxication or drunkenness, except as the good order and quiet of a municipality are disturbed by it, does not constitute an offense, under General Code, 3664, for which punishment

may be prescribed by ordinance. Hence a police court conviction therefor should be reversed.''

Section 3664 of the General Code is the same as Section 2108 of the Revised Statutes.

In other words, a municipality has no authority to pass an ordinance to punish drunkenness, except in so far as the drunkenness disturbs the good order and quiet of the corporation or city.

The same question was passed upon the same way in *Jeffries* v. *Defiance,* 25 Bull., 68, and in *In re Fitzsimmons*, 57 Bull., 285.

In the case of *In re Isidor Zacharow,* 13 N.P.(N.S.), 119, a case in habeas corpus, it appears that the relator was charged with a misdemeanor under Section 13511, General Code, in the police court of Cincinnati, and sentenced to the workhouse. There was no waiver of a jury in writing, and no jury was had. The relator was discharged, for the reason that Section 13511, General Code, provides that, ''If the accused, in a writing subscribed by him before or during the examination, waive a jury and submit to be tried by the magistrate, he may render final judgment.''

It was held in this case that the magistrate had no jurisdiction unless a jury trial was waived according to law. The relator, after the writ had been allowed to issue, prosecuted proceedings in error to the police court in the Common Pleas Court of Hamilton County; and it was held that this action did not affect the status of the case before the court, nor deprive the relator of a hearing upon the merits of the writ as the facts existed when the writ was sued out. In other words, the court held that the magistrate, because defendant had not waived a jury in writing, had no jurisdiction to try the case; for that reason the defendant should be released and discharged on habeas corpus.

For the reasons indicated, the writ will be allowed and relator discharged.